In this delayed appeal, defendant-appellant, Richard Hood challenges the voluntariness of his guilty plea to one count of voluntary manslaughter. For the reasons set forth below, we affirm.
On April 11, 1995, appellant was indicted on one count of aggravated murder in connection with the murder of a Lola Mathis on or about October 28, 1985. On August 9, 1995, the appellant, per the terms of a plea bargain, agreed to plead guilty to one count of voluntary manslaughter. As part of the plea, the appellant was to receive the minimum sentence of five to twenty- five years, which would run concurrent with two sentences already imposed upon the appellant in two other cases, including another case where the appellant had also plead guilty to voluntary manslaughter as a lesser included offense of aggravated murder.
The trial court subsequently accepted appellant's plea to the amended indictment and did in fact sentence the appellant to the agreed upon sentence. At the close of the sentencing hearing, the trial judge inquired of the two attorneys who were representing the appellant whether they were satisfied that Crim.R. 11 had been complied. Counsel replied "[v]ery well satisfied your honor." The appellant declined to address the court when he was given the opportunity to do so prior to sentencing. Appellant now appeals and assigns a single assignment of error for our review.
 THE TRIAL COURT ERRED IN ACCEPTING APPELLANT'S PLEA OF GUILTY AS IT WAS NOT ENTERED KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY.
Appellant, who was indicted for aggravated murder and chose to accept a plea bargain to voluntary manslaughter in exchange for a greatly reduced sentence, now argues that his plea was not knowing and voluntary because the trial court did not inform him of each element of the offense of voluntary manslaughter.
Crim.R. 11(C), which deals with a trial court's acceptance of a plea of guilty to a felony offense provides:
 (1) Where in a felony case the defendant is unrepresented by counsel the court shall not accept a plea of guilty or no contest unless the defendant, after being readvised that he has the right to be represented by retained counsel, or pursuant to Rule 44 by appointed counsel, waives this right.
 (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:
 (a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.
 (b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.
 (c) Informing him and determining that he understands that by this plea he is waiving his rights to jury trial, to confront witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.
In order to comply with Crim.R. 11(C), a trial court must determine whether the defendant fully comprehends the consequences of his plea of guilty. Such a determination is made through an oral dialogue between the trial court and the defendant who is entering the plea of guilty.
 Adherence to the provisions of Crim.R. 11(C)(1) requires an oral dialogue between the trial court and the defendant which enables the court to determine fully the defendant's understanding of the consequences of his plea of guilty or no contest.
State v. Caudill (1976), 48 Ohio St.2d 342, paragraph two of the syllabus.
In addition, the Supreme Court of Ohio has established that a trial court in accepting a plea of guilty, need only substantially comply with the mandates of Crim.R. 11(C). State v.Stewart (1977). 51 Ohio St.2d 86, at 92.
Literal compliance with Crim.R. 11 is the preferred practice. However, the fact that the trial court does not strictly comply with Crim.R. 11 does not compel vacation of the defendant's guilty plea if the reviewing court determines that there was substantial compliance. State v. Nero (1990), 56 Ohio St.3d 106. In Nero, the Ohio Supreme Court stated:
 Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Stewart, supra; State v. Carter (1979), 60 Ohio St.2d 34, 38, 14 O.O.3d 199, 201, 396 N.E.2d 757, 760, certiorari denied (1980), 445 U.S. 963. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. Stewart, supra, at 93, 5 O.O.3d at 5676, 364 N.E.2d at 1167; Crim.R. 52(A). The test is whether the plea would have otherwise been made.
Id. at 108.
It is clear that the trial court need not inform the defendant of each element of the offense, but rather need only ensure that he understands the charge brought against him. State v. Rainey
(1982), 3 Ohio App.3d 441; State v. Swift (1993), 86 Ohio App.3d 407. The court's determination that a defendant understands the charge can be based on the surrounding circumstances, such as recitations of discussions between the defendant and his attorney. Swift, supra, at 412.
In the instant case, the transcript of the plea indicates that appellant represented to the court that he understood the charge to which he was entering a guilty plea. The trial judge, the prosecutor and defense counsel engaged in a lengthy dialogue on the record concerning the terms of the plea bargain, including the fact that the indictment was being amended to one count of voluntary manslaughter (R.C. 2903.03), the range of potential sentences for voluntary manslaughter, the agreed upon sentence of five to twenty-five years, the fact that the appellant would receive credit for time served, the fact that the sentence would run concurrent with the sentence that had already been imposed upon the appellant by a judge in another case and would result in the appellant serving no additional time, and the agreement between the state and the appellant that the state would cease investigation of the appellant in at least one additional homicide case where the appellant might have been a suspect. The trial judge then asked defense counsel if the foregoing complied with their understanding of the plea agreement. One of the defendant's attorneys stated that it did comply with their understanding. The judge then asked the appellant if he wished to accept the plea bargain. The appellant responded in the affirmative.
At this time, prior to accepting the appellant's plea, the trial judge and the appellant engaged in the following colloquy with the appellant:
 THE COURT: Are you satisfied with the representations you've received from your lawyers?
THE DEFENDANT: Yes.
 THE COURT: I'm going to explain those rights to you. Let me know that you understand each right after I've read them by saying yes out loud. Do you understand you have a right to a trial by jury or by judge?
THE DEFENDANT: Yes.
 THE COURT: That you have the right to have witnesses appear and testify in your behalf?
THE DEFENDANT: Yes.
THE COURT: To cross-examine witnesses?
THE DEFENDANT: Yes.
 THE COURT: To have the state prove your guilt by evidence beyond a reasonable doubt?
THE DEFENDANT: Yes.
 THE COURT: To remain silent and not testify, and no one could comment on the fact that you did not testify at trial?
THE DEFENDANT: Yes.
 THE COURT: Do you understand what you're pleading guilty to?
THE DEFENDANT: Yes.
THE COURT: As well as the possible penalties?
THE DEFENDANT: Yes.
 THE COURT: Do you understand that the Court will proceed to sentencing after you plead?
THE DEFENDANT: Yes.
 THE COURT: How do you plead to the amended charge of voluntary manslaughter, guilty or not guilty?
THE DEFENDANT: Guilty.
(Emphasis added.)
As was mentioned earlier in this opinion, defense counsel represented to the court that they were "very well satisfied" that Crim.R. 11 had been complied with by the court. It must also be noted that, prior to entering this plea, the appellant had recently entered a plea of guilty to another reduced charge of voluntary manslaughter before another judge. This plea was referenced repeatedly in the present case. Presumably then the appellant was aware of the "nature of the charge" of voluntary manslaughter prior to entering a plea in this case. See,Henderson v. Morgan (1976), 426 U.S. 637, 96 S.Ct. 2253,49 L.Ed.2d 108. Nonetheless, the trial court inquired of the appellant whether he understood what it was that he was pleading to and he responded in the affirmative. Where a defendant affirmatively represents to the court that he understands the charge to which he is pleading, and the court proceeds to rely on that representation, such defendant should not then be heard to claim on appeal that he did not in fact understand the nature of the charge.
The appellant was represented by two very able criminal defense attorneys who represented to the court that they had discussed the terms and ramifications of the plea with their client. This alone is enough for this court to infer that the appellant understood the nature of the charge to which he entered a guilty plea. See State v. Swift (1993), 86 Ohio App.3d 407, 412.
Additionally, the appellant has utterly failed to demonstrate that he was in any way prejudiced by the trial court's purported failure to comply with Crim.R. 11. In order to demonstrate prejudice, the appellant must show that absent the non-compliance the guilty plea would not have been entered. State v. Nero
(1990), 56 Ohio St.3d 106, 108. In this case, the appellant was the beneficiary of a very favorable plea bargain. The factual circumstances indicated a guilty plea to a lesser offense was the wiser course to follow. Although the appellant was indicted for aggravated murder, the plea resulted in no additional jail time for the appellant. The prosecutor also took the unorthodox step of agreeing, as part of the plea bargain, that the state would cease the investigation of the appellant in connection with other homicides.
The appellant states in his brief that "[b]y appealing from the entry and acceptance of his plea, [appellant] is affirmatively showing that the plea of guilty would not have otherwise been made if he had actually understood the nature of the charge of voluntary manslaughter." Such logic is specious at best. This court is well aware of the fact that defendants who are serving a long sentence often file appeals for reasons that have nothing to do with a claimed failure to grasp the nuances of a charge to which they entered a guilty plea. The appellant in this case filed the within delayed appeal more than three years after the sentencing proceedings. The appellant has also failed to state with any specificity what part of the nature of the charge befuddled him at the time of the plea.
The totality of the circumstances in this case indicates that the appellant's plea was voluntary, intelligent, and knowingly entered. The transcript of the plea hearing demonstrates that the trial court fully complied with the dictates of Crim.R. 11. Therefore, the appellant's lone assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue but of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, JUDGE
KARPINSKI, J., CONCURS IN JUDGMENT ONLY. DYKE, P.J., DISSENTSWITH SEPERATE OPINION.