The STATE of Ohio, Appellee,

v.

SWIFT, Appellant.

[Cite as *State v. Swift* (1993), 86 Ohio App.3d 407.]

Court of Appeals of Ohio,
Geauga County.

No. 92–G–1687.

Decided Feb. 16, 1993.

408

*David P. Joyce*, Geauga County Prosecuting Attorney, and *Dennis M. Coyne*, Assistant Prosecuting Attorney, for appellee.

*Michael A. Partlow*, for appellant.

---

CHRISTLEY, Judge.

Defendant-appellant, Thomas A. Swift, appeals his conviction for rape, a violation of R.C. 2907.02(A)(2).

A bill of information was filed against appellant charging him with rape. On December 27, 1991, appellant entered a plea of guilty to the charge pursuant to a plea agreement. The trial court found appellant guilty and ordered a presentence investigation. On February 6, 1992, the trial court sentenced appellant to an indefinite term of incarceration for a period of no less than eight years and no more than twenty-five years and ordered appellant to pay the costs of prosecution pursuant to R.C. 2947.23.

Appellant has filed a timely notice of appeal and now presents the following assignments of error:

"1. The trial court erred, to the prejudice of the appellant, by accepting a guilty plea which was not given knowingly and voluntarily.

"2. The trial court abused its discretion in sentencing the appellant to an indefinite term of incarceration of 8 to 25 years."

In addition to the foregoing, appellant has filed a *pro se* brief raising the following errors:

"1. That the Appellant's plea of guilty to Rape Ohio Revised Code 2907.02 was not knowly [*sic*], voluntarily with proper advice and full understanding of the consequences when the Bill of Information lacked elements thereof.

"2. That the Trial Court lacked jurisdiction to accept Appellant's plea to Rape when he should have been charged with Sexual Battery, Ohio Revised Code 2907.03.

"3. That the Appellant's plea of guilty is an infraction of procedure of due process, due process [*sic*], and equal protection of law 5th, 6th, 8th, 9th, and 14 *Ams* [*sic*] *U.S. Constitution* in accordance with Article I, sections 2, 9, 10, and 16 *Ohio Constitution*.

"4. Appellant's Article I, section 10 *Ohio Constitution* in conjunction with 5th *Ams* [*sic*] *U.S. Constitution* pursuant to procedural of due process, due process of law, and due process clause was violated when Ravenwood Mental Health Center turned his Mental Health confidentiality records over to Human Services for

prosecution with [*sic*] advising him of his self-incrimination State and Federal Constitutional Rights, as cited in 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] *Miranda v. Arizona* [ (1966) ]."

In the first assignment of error, appellant argues that his guilty plea was not made knowingly and voluntarily because he did not understand both the nature of the rape charge and that the state would have to prove that he forced or threatened force in compelling his daughter to submit to sexual intercourse. Appellant further contends that he was not mentally competent to enter a guilty plea.

Regarding appellant's mental competence, the trial court made the following inquiry:

"THE COURT: Have you ever been treated for any mental disorder?

"MR. SWIFT: Yes, sir. I have had suicide attempts in the past. I have had problems.

"THE COURT: When?

"MR. SWIFT: I have had, you know, a lot of suicide problems. I'm not in that position now because of my religion. I can't I talked to—

"THE COURT: Well, are you now competent mentally?

"MR. SWIFT: Well, I'm very depressed. I have been very depressed for a long period of time. When my mother-in-law made the initial call it was to get me some treatment for the depression and to help our daughter.

"She had made some comments to Human Services there, and kind of right now she is feeling very deceived because her desires, she feels, is [*sic*] not being helped.

"THE COURT: Are you doing this of your own free will or is anybody pressuring you into it?

"MR. SWIFT: Well, I'm going through this because I want to get well. I talked to Ravenwood. I have gone through their evaluation.

"I had an appointment set up next Friday with Mr. Dauler at Ravenwood. I'm planning on getting some help with some depression.

"THE COURT: The Stop Program?

"MR. SWIFT: And I was hoping to get into their Stop Program as well as try to do what I can for my family.

"THE COURT: You understand that you won't get into the Stop program?

"MR. SWIFT: I know that."

Appellant's attorney then offered the following:

"MR. UMHOLTZ:. Your Honor, I have had some rather extensive conversations with Mr. Swift over the course of the past week. And we have discussed this matter, I believe, fully.

"I have explained to him that it's not even a probation[able] offense; that he will not be receiving probation. He understands that.

"Perhaps this is better addressed at sentencing but he, I would have to commend him that he is not denying his participation in this matter. He does want treatment.

"He realized that treatment is not an option at this point because of the mandatory prison sentence that will be imposed.

"Nevertheless, he does not want to put his daughter or the family through a trial. He is, as far as I know, he's never denied his involvement in this matter.

"We have discussed the possibility of not guilty by reason of insanity plea. He doesn't feel that that's appropriate.

"He's aware of all his options, and I think that he is making this plea knowingly and voluntarily although somewhat certainly with mixed emotions and with a great deal of sadness. But nevertheless, he is making it knowingly, understandingly, and voluntarily."

The foregoing record, although demonstrating that appellant may have been suffering from some mental illness such as depression, does not demonstrate mental incompetence at the time of rendering such plea. R.C. 2945.37(A) states that a criminal defendant is presumed competent to stand trial unless it is established that he is unable to understand the nature of the proceedings and cannot assist in his defense. In interpreting this definition, the Ohio Supreme Court has stated that mere emotional or mental instability is not the same as incompetency: "A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock* (1986), 28 Ohio St.3d 108, 110, 28 OBR 207, 210, 502 N.E.2d 1016, 1019.

Taken as a whole, the record before this court *does not* support the conclusion that the trial court abused its discretion in not ordering a psychiatric examination *sua sponte*. Appellant's concern over treatment does not mean that he was confused or did not comprehend what was occurring in the proceeding. Thus, this aspect of the first assignment is without merit.

Concerning the lack of a "knowing" entry of a plea, when the trial court proceeded to inform appellant of his rights, pursuant to Crim.R. 11, it accepted appellant's plea as follows:

"THE COURT: Okay. How do you plead to the Bill of Information and to the charge of rape?

"MR. SWIFT: Guilty, sir.

"THE COURT: Tell me what you did.

"MR. SWIFT: I had intercourse with my daughter. It was being used as punishment.

"THE COURT: It was being used as punishment?

"MR. SWIFT: Yes. I get no pleasure out of it, even with my wife.

"THE COURT: And your daughter was under the age of 13?

"MR. SWIFT: Yes, sir.

"THE COURT: And did you compel her by force?

"MR. SWIFT: I didn't force her; I gave her a choice of that or being spanked. She made that choice.

"THE COURT: So, you really made her submit by force didn't you. By threat of force anyway.

"MR. SWIFT: Well, I gave her a choice.

"THE COURT: Well, if you threatened [that she] either be spanked or submit, I would say that's by threat of force."

■ The question raised by the above dialogue is whether a trial court is required to fully explain the legal significance of the offense's elements when accepting a plea, i.e., did the defendant have to fully understand what "force" was under the law before his plea could be accepted?

■ The courts of this state have generally held that a detailed recitation of the elements of the charge is not required under Crim.R. 11(C)(2)(a). *State v. Rainey* (1982), 3 Ohio App.3d 441, 3 OBR 519, 446 N.E.2d 188. The court's determination that the defendant understands the charge can be based on the surrounding circumstances, such as recitations of discussions between the defendant and his attorney.

Thus, the trial court in the instant case was not required to define to the defendant what "force" was. A guilty plea could have been accepted if the defendant had admitted the facts that formed the basis of the charge. That is, if the defendant in this case had admitted, without saying anything else, that he had threatened to punish his victim if she did not submit, the trial court could have accepted the plea without any further discussion of the elements. However, in this case, the defendant qualified his admissions when he indicated that he did not believe that giving an ultimatum to the victim constituted the use of "force."

■ Although there are no cases specifically addressing the issue of the extent to which a trial court must explain an element once the defendant has indicated that he does not understand, it is clear that a court must "clear-up" any confusion on the part of the defendant before it can accept a guilty plea. For example, in *State v. Funk* (Oct. 22, 1986), Medina App. No. 1499, unreported; 1986 WL 11921 the Ninth Appellate District reversed a conviction based upon a plea because the trial court did not inform the defendant of the maximum penalty for the charge, after the defendant had indicated that he thought it was less.

The leading federal case on this particular point appears to be *Nash v. Israel* (C.A.7, 1983), 707 F.2d 298. Nash was charged under Wisconsin law with a form of aiding and abetting in a murder. During the course of his plea hearing, Nash stated that he could not see how he could be charged with murder when he had not actually been the one to kill the victim. In response, the state trial court stated that one could be convicted of murder if one caused, with others, the death of another.

On appeal in the habeas proceeding, the Seventh Circuit held that the state trial court was required to inform Nash of what "intentionally aiding and abetting" was. It further held that the court had to explain to Nash how his action constituted the charge.

In the instant case, the trial court did go on to explain what "force" was to the defendant and how his actions were sufficient to satisfy the requirement. Unfortunately, the record does not reflect if the appellant then understood and agreed. Per *Nash*, this was not sufficient to show that the defendant was then aware of what "force" was. Although not one of the cases says this directly, it would appear that the burden upon the trial court becomes greater once there is an indication that the defendant is confused.

Here, there was an indication of either confusion or misunderstanding, and, properly, the trial judge attempted to clarify the situation. It may very well be that the appellant did make some nonverbal indication that he understood the explanation the judge provided; however, the record does not so indicate.

As a result, the implication is that the issue was not resolved and the appellant did not make a knowing plea. Accordingly, this portion of the assignment constitutes error.

■ As to whether the judge was correct in finding that appellant's actions constituted "force," we agree that those actions indeed constituted "force." Appellant admitted that he had intercourse with his daughter who was under age thirteen. Appellant contended that the sexual intercourse was used as punishment and that he gave his daughter a choice of submitting to intercourse or being spanked.

Under these facts, *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, and not *State v. Schaim* (1992), 65 Ohio St.3d 51, 600 N.E.2d 661, is analogous and applicable. It is not clear from the record exactly how young appellant's daughter was at the time of the rape, just that she was under age thirteen. Regardless, it is evident that appellant's daughter was a young child, and, thus, was susceptible to the inherent coercion that appellant, as parent, had over her. Therefore, a minimal degree of force satisfies the elements of forcible rape. *Eskridge.* Nevertheless, per our discussion in the first portion of this assignment, the first assignment of error is with merit.

█ In the second assignment of error, appellant contends that the trial court abused its discretion in sentencing him to an indefinite term of incarceration of eight to twenty-five years. Appellant maintains that the court improperly relied on appellant's criminal conduct as a juvenile in denying appellant the minimum term of incarceration.

There was some reference to two prior incidents for which appellant received warnings, first as a juvenile and then as a twenty-six-year-old adult in 1977. It is not clear what the two incidents were, exactly, but appellant suggests a pedophilia problem. The presentence investigation is not a part of the record before this court.

The trial court refused to impose the minimum sentence, stating, " * * * But I feel that you should have learned from your two prior experiences, and I don't feel that it's justified giving you the minimum sentence."

█ It is well settled that sentencing is a matter within the trial court's discretion. Absent an abuse of discretion, an appellate court will not reverse the trial court's sentence which is within the sentencing guideline, in this case five to twenty-five years. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179; *State v. Lewis* (Sept. 30, 1992), Trumbull App. No. 92–T–4654, unreported, 1992 WL 267410. Moreover, under R.C. 2929.12, it is within the court's discretion to determine the minimum term for a felony for which an indefinite term of imprisonment is imposed.

In this case, the trial court sentenced appellant to a minimum of eight years to a maximum of twenty-five years, which is well within the guidelines of a minimum term of five, six, seven, eight, nine, or ten years and the maximum term of twenty-five years. Thus, the court's discretion and sentence will not be disturbed.

The second assignment of error is not well taken.

In support of his first three *pro se* assignments of error, appellant argues that the trial court did not have jurisdiction to accept his guilty plea for rape, but only

had jurisdiction over the crime of sexual battery, R.C. 2907.03, because appellant denies that he compelled his daughter to submit to sexual conduct by force or threat of force.

It cannot be seriously argued that the trial court lacked jurisdiction to hear this criminal case. The court had both personal and subject matter jurisdiction to hear the case. What appellant seems to imply is that the facts do not demonstrate the element of force or threat of force. Appellant contends his daughter consented because he gave her a choice. The court found that the choice that she be either spanked or submit constituted a threat of force. Per our discussion in the latter part of the first assignment, we agree with the trial court.

Next, appellant argues that his plea was involuntary because it was based on counsel's advice concerning the bill of information, which did not contain all three elements of the crime of rape. This argument is not well taken.

The bill of information charged appellant with rape, and the trial court could have properly accepted appellant's plea based on appellant's admission that he had intercourse with his daughter and the court's finding that the choice appellant gave to his daughter to either be spanked or submit constituted a threat of force. If there had not been any qualification as to the meaning of the term "force" by appellant, the trial court would have been quite correct in its actions. Therefore, appellant's first three *pro se* assignments of error are not well taken.

In the fourth *pro se* assignment of error, appellant contends that he was denied his constitutional right to due process by having his confidential medical records turned over to human services, which resulted in appellant's prosecution for rape.

The record does not contain any evidence regarding appellant's medical records or what prompted the filing of the bill of information. Thus, there is nothing for this court to pass upon. See *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219, 400 N.E.2d 384, 385.

The fourth assignment of error is without merit.

Based on the foregoing, this case is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FORD, P.J., concurs separately.

MAHONEY, J., dissents.

FORD, Presiding Judge, concurring separately.

I concur in the foregoing opinion; however, I write separately to more fully explain my thoughts regarding the competency issue.

During the plea hearing, the trial court became aware that appellant had attempted suicide in the past. While appellant stated that he was no longer in "that position now," he also said that he was very depressed. Furthermore, appellant did not demonstrate an understanding that when he gave his daughter a choice between a spanking or sexual intercourse, that he was employing a "threat of force."

A criminal defendant has a due process right not to be tried when incompetent to stand trial. *Drope v. Missouri* (1975), 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103, citing *Pate v. Robinson* (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815. Specifically, a defendant is incompetent to stand trial when, due to his present mental condition, he is incapable of understanding the nature and objectives of the proceedings against him or of presently assisting in his defense. R.C. 2945.37(A).

Obviously, a record need not unequivocally establish incompetence before a hearing on such issue should be ordered. Therefore, a trial court can abuse its discretion in not ordering a competency hearing even though the facts would not warrant a determination of incompetency. Because the record contains indicia of incompetence based upon appellant's past suicide attempts coupled with his failure to comprehend that the option with which he had presented his daughter was a "threat of force," the trial court on remand might consider reexamining this issue and the possible need for such an examination under R.C. 2945.37. If it determines that there is no basis for such undertaking, an amplified statement of its reasoning for not undertaking such an exercise in the record would be helpful. While ultimately I agree that the trial court did not abuse its discretion, trial courts should remain aware of their duty to raise such issues and err on the side of ordering competency hearings in borderline cases.

JOSEPH E. MAHONEY, Judge, dissenting.

I respectfully dissent from the majority's opinion in resolving the first assignment of error.

The record clearly demonstrates that appellant knowingly and voluntarily entered a guilty plea and was not mentally incompetent at the time of rendering such plea. It is evident from the representations of appellant's counsel as well as the exchange between the court and appellant that appellant knew and understood the charges against him and did not deny his participation in the offense.

It is also clear that appellant wanted treatment and did not want to put his family through a trial.

Based on the record, I conclude that appellant's plea was made knowingly, understandingly, and voluntarily.