OPINION
{¶ 1} Mark S. Edwards pled guilty in the Montgomery County Court of Common Pleas to one count of engaging in a pattern of corrupt activity, one count of aggravated theft by *Page 2 
deception, and numerous counts of forgery and tampering with records. The trial court convicted him on all counts and sentenced him accordingly.
 {¶ 2} Edwards filed a pro se notice of appeal, and an attorney was appointed. Edwards' attorney filed a brief pursuant to Anders v.California (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, wherein counsel represented that he could find no arguably meritorious issues to present on appeal and asked to withdraw from the case. We informed Edwards that his counsel had filed an Anders brief and invited him to file a pro se brief assigning errors for review. Edwards filed a brief raising two assignments of error.
 {¶ 3} Edwards contends that he was denied the effective assistance of counsel, because his attorney did not inform him that the charges against him were allied offenses of similar import before he entered his guilty pleas. He also claims that the indictment did not contain the essential elements of the charges against him. We conclude that the offenses with which Edwards was charged were not allied offenses, that he was not denied effective assistance of counsel, and that the indictment was not defective. Accordingly, we will affirm the trial court's judgment.
 I {¶ 4} The allegations against Edwards, as described in the state's sentencing memorandum and brief, were as follows.
 {¶ 5} Between April 2002 and February 2003, Edwards and Mark Musselman engaged in a criminal enterprise involving the forging of loan applications, appraisals, and settlement statements and the filing of fraudulent deeds on twelve properties in Dayton, Toledo, and Springfield, Ohio. In doing so, Edwards and Musselman fraudulently used the identities of *Page 3 
recently deceased individuals to purchase properties. Edwards and Musselman "falsified appraisals to reflect inflated values on the subject properties, forged loan applications by inventing buyers under the names of the recently deceased individuals and supplying false employment and asset information for those `buyers,' obtained loans for the inflated prices, and then provided false information to the lender and title companies, thereby forging settlement statements." They then pocketed the extra cash dispersed by the title companies at closing. Fraudulent deeds in the names of the deceased individuals were then filed on each of the twelve properties, which eventually went into foreclosure. Edwards and Musselman acquired several million dollars using this scheme.
 {¶ 6} On December 7, 2005, Edwards and Musselman were each indicted on one count of engaging in corrupt activity, one count of aggravated theft, thirty-four counts of forgery, and twelve counts of tampering with records. In March 2007, Edwards pled guilty to all 48 counts. He was sentenced to three years of imprisonment on the pattern of corrupt activity charge; one year for aggravated theft; one year on each of the nine counts of forgery involving more than $100,000; six months on each of the twenty-four counts of forgery involving more than $5,000 but less than $100,000; and one year on each count of tampering with records. Some of the sentences were concurrent and some were consecutive, and Edwards' aggregate term was six years. He was also ordered to pay restitution in the amount of $1,151,150.
 {¶ 7} Musselman was tried by a jury and was convicted of the same 48 counts.
 {¶ 8} Edwards raises two assignments of error on appeal.
 II {¶ 9} Edwards' first assignment of error states: *Page 4 
 {¶ 10} "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, BY COUNSEL'S FAILURE TO RECOGNIZE THAT THE CHARGED OFFENSES ARE `ALLIED OFFENSES OF SIMILAR IMPORT.'"
 {¶ 11} Edwards claims that he was denied the effective assistance of counsel because counsel did not recognize, and did not advise him, that the charged offenses were allied offenses of similar import. He claims that, if he had known that the offenses were allied offenses, he would not have entered his plea.
 {¶ 12} To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674;State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 13} Edwards' claim of ineffective assistance of counsel is premised on his belief that the offenses to which he pled guilty were allied offenses of similar import.
 {¶ 14} R.C. 2941.25 sets forth the criteria for determining whether offenses are allied offenses of similar import. It provides:
 {¶ 15} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 16} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import pursuant to R.C. 2941.25(B), or where his conduct results in two or *Page 5 
more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 17} In applying R.C. 2941.25, the supreme court has established a two-part test for determining whether multiple offenses are allied offenses of similar import. First, the court must compare the elements of the offenses in the abstract to determine whether the elements correspond to such a degree that the commission of one crime will necessarily result in the commission of the other. State v. Rance,85 Ohio St.3d 632, 636, 1999-Ohio-291. If the elements do so correspond, the offenses are allied offenses of similar import, and the defendant may be convicted of and sentenced for both offenses only if he committed the crimes separately or with a separate animus. Id. at 638-39. If the elements do not so correspond, the offenses are of dissimilar import, and the court's inquiry ends. Id. In the second step, the defendant's particular conduct is reviewed to determine whether the defendant can be convicted of both crimes. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. Id.
 {¶ 18} As in this case, Edwards' co-defendant, Musselman, was convicted of one count of engaging in a pattern of corrupt activity, one count of aggravated theft by deception, and multiple counts of forgery and tampering with records. On appeal, Musselman also argued that the offenses of which he was convicted were allied offenses of similar import. Because the charges and facts were identical, our opinion inState v. Musselman, Montgomery App. No. 22210, 2009-Ohio-424, is dispositive of *Page 6 
this argument:
 {¶ 19} "The statute defining the offense of engaging in a pattern of corrupt activity provides:
 {¶ 20} "`No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity[.]' R.C. 2923.32(A)(1). A `pattern of corrupt activity' requires `two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.' R.C. 2923.31(E). `Corrupt activity' includes Musselman's alleged acts of theft, forgery, and record tampering. R.C. 2923.31(I)(2)(c).
 {¶ 21} "The theft statute provides:
 {¶ 22} "`No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * by deception.' R.C. 2913.02(A)(3).
 {¶ 23} "The forgery statute provides:
 {¶ 24} "`No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * utter, or possess with purpose to utter, any writing that the person knows to have been forged.' R.C. 2913.31(A)(3).
 {¶ 25} "The record-tampering statute provides:
 {¶ 26} "`No person, knowing the person has no privilege to do so, and with the purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [u]tter any writing or record, knowing it to have been tampered with[.]' R.C. 2913.42(A)(2). *Page 7 
 {¶ 27} "As an initial matter, we have no difficulty concluding that theft by deception, forgery, and record tampering are not allied offenses of similar import. Comparing the elements of these offenses in the abstract, it is apparent that commission of one of them will not necessarily result in commission of another. Theft by deception may be committed by obtaining control over the property of another. Neither forgery nor record tampering requires obtaining control over the property of another. Moreover, forgery and record tampering are not allied offenses. Forgery may be committed by possessing with the purpose to utter a forged writing, whereas record tampering requires actually uttering a writing or record that has been tampered with. Moreover, if a person utters a record that has been tampered with for purposes of a record-tampering conviction, the tampering at issue may be something other than a forgery. [Footnote 1: Tampering with a record includes falsifying, destroying, removing, concealing, altering, defacing, or mutilating it. R.C. 2913.42(A)(1) and (2).] Even assuming, arguendo, that forgery and record tampering are allied offenses of similar import, Musselman committed those crimes separately. The record reflects that the forgery and record-tampering convictions all involved different documents. The forgery convictions stemmed from Musselman's role in forging loan applications, appraisals, and settlement statements. The record-tampering convictions arose from his role in having fraudulent property deeds filed with the county recorder. Therefore, Musselman could be convicted separately for these offenses under the second part of the two-part Ranee test discussed above.
 {¶ 28} "Finally, we reject Musselman's argument that he cannot be convicted separately for engaging in a pattern of corrupt activity and the predicate offenses of *Page 8 
theft, forgery, and record tampering. Musselman contends the theft, forgery, and record tampering offenses formed the pattern of corrupt activity needed for his conviction on count one. We note, however, that commission of the offense of engaging in a pattern of corrupt activity will not necessarily result in commission of the offense of theft, forgery, or record tampering. This is so because a conviction for engaging in a pattern of corrupt activity may be based on two or more violations of numerous other criminal statutes. See R.C. 2923.31(I) (identifying a multitude of crimes that qualify as `corrupt activity'). Because a defendant need not engage in theft, forgery, or record tampering to commit the offense of engaging in a pattern of corrupt activity and vice versa, the crimes are not allied offenses of similar import. * * *" Id. at ¶ 29-38. Having thoroughly discussed and rejected inMusselman the argument that engaging in a pattern of corrupt activity, theft, forgery, and record tampering are allied offenses under the facts of this case, we rely on that analysis here. Because we have found that the offenses to which Edwards entered his pleas were not allied offenses, we must also reject Edwards' argument that his attorney was ineffective in failing to advise him that they were allied offenses.
 {¶ 29} The first assignment of error is overruled.
 III {¶ 30} Edwards' second assignment of error states:
 {¶ 31} "THE INDICTMENT FAILS TO INCLUDE THE ESSENTIAL ELEMENTS FOR WHICH THE APPELLANT HAD TO DEFEND [SIC]."
 {¶ 32} Edwards claims that his indictment for engaging in a pattern of corrupt activity did not state the mens rea for the offense, contrary to the supreme court's *Page 9 
recent holding in State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624. He also contends that the indictment should have stated that he was "Doing Business as Phoenix Funding" when he engaged in the alleged illegal activities because all of his actions were performed in the scope of his employment.
 {¶ 33} With respect to the mens rea, Edwards asserts that his indictment for engaging in a pattern of corrupt activity "clearly omits the culpable mental state" and that "the defect spread throughout the entire proceeding," as it did in Colon. The state claims that Edwards waived this claim when he pled guilty to the offenses. Moreover, the state points out that the alleged error in the indictment could not have pervaded the proceedings in the manner discussed in Colon, because there was no trial. Further, the state contends that engaging in a pattern of corrupt activity is a strict liablity offense for which no mens rea is required.
 {¶ 34} The state is correct that a defendant waives any deficiency in the indictment by failing to object to the indictment and pleading guilty to the offense. State v. Barton, 108 Ohio St.3d 402,2006-Ohio-1324, at ¶ 73. Thus, Edwards waived his claim that there was a defect in the indictment when he entered his guilty plea.
 {¶ 35} However, even if we were to consider the merits of Edwards' argument, we would conclude that there was no defect in the indictment. In Musselman, we recognized that engaging in a pattern of corrupt activity is a strict liability offense. As such, the state was not required to include a mens rea in the indictment, and Colon is inapplicable. Musselman at ¶ 47.
 {¶ 36} Finally, Edwards cites no authority in support of his argument that the indictment should have included the name of his employer, and we are aware of none. *Page 10 
The fact that Edwards and Musselman used a mortgage company to advance their criminal enterprise had no bearing on the indictment.
 {¶ 37} The second assignment of error is overruled.
 IV {¶ 38} The court has conducted an independent review of the trial court's proceedings and has found no error having arguable merit.Penson v. Ohio (1988), 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300; the judgment of the trial court will be affirmed.
DONOVAN, P.J. and GRADY, J., concur. *Page 1